# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| TINA M. BALCH, | )<br>) |
| Plaintiff, | )<br>) |
| | ) CIVIL ACTION |
| v. | )<br>) No. 12-2474-JWL |
| CAROLYN W. COLVIN,[1]<br>Acting Commissioner of Social Security, | )<br>)<br>) |
| Defendant. | )<br>) |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security Disability(SSD) benefits under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding error in the Commissioner's evaluation of the medical opinions, the court ORDERS that the decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

**I.    Background**

---

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for SSD alleging disability beginning June 14, 2008. (R. 20, 264-65). In due course, Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. She now alleges that the Appeals Council erred in failing to secure vocational expert testimony, that the Appeals Council and the Administrative Law Judge (ALJ) erred in weighing the medical opinions, and that the ALJ erred in considering her obesity and in evaluating the credibility of her allegations of symptoms resulting from her impairments.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the

determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one

3

through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

In this case, the Appeals Council granted Plaintiff's request for review of the ALJ's decision, and issued a "Decision of the Appeals Council" finding that Plaintiff is not disabled within the meaning of the Act, and denying her application for benefits. (R. 4-7). Therefore the decision of the Appeals Council is the final decision of the Commissioner which is the object of the court's review. (R. 1); 20 C.F.R. § 404.981. In its decision, however, the Council adopted much of the ALJ's decision including her statement of the facts, her findings at each of the steps in the sequential evaluation process, and her credibility determination. (R-5). In reviewing the final decision of the Commissioner, the court will keep in mind those portions of the ALJ's decision which were adopted by the Appeals Council.

The Council found that the ALJ had not considered the medical opinion of Dr. Fantz, a state agency medical consultant, weighed that opinion, and accorded it "substantial weight." (R. 5). Consequently, it found that Plaintiff "would be able to work around others and get along with coworkers and supervisors, but would likely have some problems in a job that required constant contact with the public." (R. 6). Based upon this

4

change in the RFC assessment, the Council reviewed the representative jobs found by the ALJ and determined that two of the jobs do not require sustained contact with the public and could be performed by an individual with Plaintiff's RFC (garment sorter, and folding machine operator), but that one of the jobs (ticket taker) required sustained contact with the public, and could not be performed by Plaintiff. (R. 6). It determined Plaintiff is not disabled, and denied her application. Id. at 7.

Remand is necessary in this case because the court's review of the decision reveals error in the evaluation of the record medical opinions. Therefore, the court need not address Plaintiff's allegations of error in failing to seek vocational expert testimony, in evaluating obesity, or in considering the credibility of Plaintiff's allegations of symptoms. Plaintiff may make her arguments in this regard to the Commissioner on remand.

## II. Evaluation of the Medical Opinions

Plaintiff claims error in the evaluation of the medical opinions. She argues that Dr. Fantz's opinion should not have been given "significant weight;" that the final decision did not mention the medical opinion of a testifying medical expert, Dr. Karsh, and did not specify the weight accorded to the non-treating source opinion of Dr. Schemmel or to the treating source opinion of Dr. Radadiya; and that the opinion of Dr. Winkler, a second testifying medical expert, should not have been given any weight. The Commissioner argues that the medical opinions were properly considered. Specifically, she argues that Dr. Radadiya's treating source opinion was properly considered and discounted, that Dr. Winkler's opinion was properly accorded significant weight, and that Dr. Fantz's opinion

5

was properly accorded substantial weight. She tacitly admits that the ALJ did not specify the weight accorded to Dr. Schemmel's opinion, but argues that "it is clear from the RFC that the Commissioner afforded this opinion some weight." (Comm'r Br. 21). In a footnote, she argues that "the Commissioner explicitly rejected Dr. Karsh's indications that fibromyalgia could not constitute a severe impairment." Id. at 19, n.3.

### A. Standard for Evaluating Medical Opinions

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. § 404.1527(a)(2). Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be evaluated in accordance with factors contained in the regulations. Id. § 404.1527(d); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2013). Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. § 404.1527(d)(2-6); see also Drapeau v. Massanari, 255 F.3d

6

1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

A physician who has treated a patient frequently over an extended period of time (a treating source)[2] is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of nontreating sources are generally given more weight than the opinions of non-examining sources who have merely reviewed the medical record. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

---

[2]The regulations define three types of "acceptable medical sources:"

"Treating source:" an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship. 20 C.F.R. §§ 404.1502, 416.902.
"Nontreating source:" an "acceptable medical source" who has examined the claimant, but never had a treatment relationship. Id.
"Nonexamining source:" an "acceptable medical source" who has not examined the claimant, but provides a medical opinion. Id.

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 404.1527(d)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2013) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p). The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300 (quoting SSR 96-2p). If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id. However, even if the treating source opinion is not given controlling weight, the inquiry does not end. Id. A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id.

After considering the regulatory factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion. Id. 350 F.3d at 1301. The court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the

treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300). "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." Watkins, 350 F.3d at 1301 (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

**B.**     **Analysis**

The Commissioner's argument that it is clear from the RFC that Dr. Schemmel's opinion was afforded some weight illustrates the error in the decision at issue here. As the Commissioner's argument suggests, it would be necessary for the court to compare the opinions of Dr. Schemmel, Dr. Karsh, and Dr. Radadiya with the RFC assessed by the ALJ and the Appeals Council in order to know the weight they were accorded. In the decision, the ALJ merely summarized Dr. Schemmel's opinion without any comment, pro or con, on how she accepted the components of that opinion. (R. 24). Her treatment of Dr. Radadiya's opinion was similar, except that she commented that Dr. Radadiya provided little objective support for his opinion, provided no clinical testing of Plaintiff's functional capabilities, and appeared to incorporate whatever Plaintiff alleged into his opinions without assessing Plaintiff's allegations independently. (R. 24-25). As the Commissioner notes in her brief, the ALJ rejected Dr. Karsh's "indication" that fibromyalgia cannot be a severe impairment, and stated that was the reason she held another supplemental hearing to allow another medical expert to testify. (R. 20).

9

Thus, it would be necessary for the court to compare each component of these doctors' opinions with each RFC limitation assessed by the ALJ to determine how much weight the ALJ accorded each opinion. And then, it would still have no idea of the basis for the ALJ's acceptance or rejection of each component of the opinions. This is error because the decision is not sufficiently specific for the court to know the weight given to the medical opinions by the Commissioner or the reasons for that weight.

Moreover, there are other problems with the Commissioner's handling of these opinions. First, the ALJ misunderstood Dr. Karsh's testimony, contrary to the ALJ's finding, Dr. Karsh did not offer the opinion that fibromyalgia can never be a severe impairment. Rather, he stated, "In addition, there are no blood tests, nerve tests, x-rays, anything that is a positive objective sign of fibromyalgia. The question then arises, can somebody be disabled by chronic pain? The answer is, yes, but the determination is up to you, Your Honor, based upon the testimony of the patient. I, I have nothing that would say that this fibromyalgia is disabling objectively in the record." (R. 67). As this quotation reveals, Dr. Karsh stated that there are no objective signs of fibromyalgia, and as a consequence, he is unable to determine how severe the fibromyalgia is merely from a review of the medical records, but that determination must be made by the ALJ. The ALJ simply erred in evaluating Dr. Karsh's opinion. Moreover, as Plaintiff suggests, the final decision does not even mention Dr. Karsh's opinion. While the ALJ's decision erroneously dismissed Dr. Karsh's opinion as discussed above, the Appeals Council did not mention Dr. Karsh's opinion, and it is by no means clear that the ALJ's discussion of

10

Dr. Karsh's opinion is among the portions of the ALJ's opinion adopted by the Appeals Council. This is error requiring remand for a proper evaluation of that opinion.

Finally, the ALJ's errors are compounded by the fact that Dr. Radadiya is a treating source. While it is clear from the decision that the ALJ did not give controlling weight to Dr. Radadiya's treating source opinion because that opinion is inconsistent with other medical opinions of record--and the decision might even be read to hold that the opinion was rejected entirely--there is no explanation how the ALJ examined "the other physicians' reports 'to see if [they] "outweigh[]" the treating physician's report, not the other way around.'" Goatcher, 52 F.3d at 289-90 (quoting Reyes v. Bowen, 845 F.2d 242, 245 (10th Cir. 1988)). On remand, it will be necessary for the Commissioner to explain the weight given to each medical opinion and the reasons for that weight. If greater weight is given to the opinions of Dr. Fantz and Dr. Winkler or any other medical source than to a treating source opinion, it will be necessary to explain how those opinions outweigh the treating source opinion.

**IT IS THEREFORE ORDERED** that the final decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING this case for further proceedings consistent with this opinion.

Dated this 12th day of November 2013, at Kansas City, Kansas.

        s:/ John W. Lungstrum
        **John W. Lungstrum**
        **United States District Judge**